2024 IL App (1st) 240894-U

No. 1-24-0894B

Second Division
July 17, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

|  |  |  |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
|  | ) |  |
| Plaintiff-Appellee, | ) |  |
|  | ) | No. 24 CR 02415-01 |
| v. | ) |  |
|  | ) |  |
| AARON WASHINGTON, | ) | Honorable |
|  | ) | William G. Gamboney, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Howse and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's denial of defendant-appellant's motion for pretrial release following a continued detention hearing where defendant posed a real and present threat to the community.

¶ 2    On February 11, 2024, defendant-appellant, Aaron Washington, was arrested and subsequently charged by indictment for violation of various sections of the Criminal Code of 2012, including (1) armed habitual criminal, a Class X felony (720 ILCS 5/24-1.7(a) (West 2022));

(2) armed violence, a Class X felony (*id.* § 33A-2(a)); (3) unlawful use or possession of a weapon by a felon, a Class 2 felony (*id.* § 24-1.1(a)); and (4) two counts of aggravated unlawful use of a weapon, a Class 2 felony (*id.* § 24-1.6(a)(1), (a)(3)(A-5); (a)(1), (a)(3)(C)). Defendant was also charged with possession of between 15 and 100 grams of heroin, a Class 1 felony, pursuant to section 402(a)(1)(A) of the Illinois Controlled Substances Act (720 ILCS 570/402(a)(1)(A) (West 2022)).

¶ 3    On February 12, 2024, the State filed a verified petition for a pretrial detention hearing, pursuant to sections 110-2 and 110-6.1 of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/110-2, 110-6.1 (West 2022)), as amended by Public Act 101-652, commonly referred to as "the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act" or the "Pretrial Fairness Act" (Act). See Pub. Act 101-652, § 10-255 (eff. Jan. 1, 2023); Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023); Ill. S. Ct. R. 604(h)(1) (eff. Oct. 19, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). That same day, the circuit court granted the State's request and entered an order for detainment. At some point thereafter, defendant filed a motion for release, and a "detention" hearing was held on March 28, 2024.

¶ 4    Now, in this interlocutory appeal, defendant argues that the circuit court erred in ordering continuing pretrial detention, in that the court improperly conducted the hearing, and that defendant did not constitute a real and present threat. For the reasons that follow, we affirm the decision of the circuit court.

¶ 5                                  I. BACKGROUND

¶ 6                            A. Pretrial Detention Petition

¶ 7    On February 12, 2024, the State filed its verified petition for pretrial detention. Therein, the State argued that (1) the charged offense of armed habitual criminal was a non-probationable felony eligible for pretrial detainment pursuant to section 110-6.1(a)(1) of the Procedure Code (725 ILCS 5/110-6.1(a)(1) (West 2022)), (2) defendant posed a "real and present threat to the safety of any person or persons or the community," and (3) there was "[n]o condition or combination of conditions set forth in 725 ILCS 5/110-10(b) [725 ILCS 5/110-10(b) (West 2022)] *** to mitigate that risk." With regard to the second element, the State asserted that:

> "Arresting [o]fficers were alerted that defendant was waving a gun on public transportation, was subsequently found to have a gun in his possession, and carried a total of 28 bags of suspect heroin on his person. Furthermore, defendant has been convicted of six felonies, including a reduced armed robbery charge in 2001, aggravated battery in 2002, and attempt murder in 2007."[1]

¶ 8    The petition included a supplemental "Public Safety Assessment" (PSA), conducted by "pretrial services." The assessment rated defendant's "new criminal activity score" as a "4" out of "6," and a "failure to appear" score as a "3" out of "6." It rated his "new violent criminal activity flag" as a "no," but noted that he had both prior misdemeanor and felony convictions, including one violent felony, as well as a prior sentence. It also noted that defendant had failed to appear in court on a matter older than two years old. Its overall assessment was that defendant's "pretrial supervision level" was a "2."

¶ 9                              B. Initial Pretrial Detention Hearing

---

[1]During the subsequent "detention" hearing, the State asserted that defendant had seven prior felonies.

¶ 10    On February 12, 2024, defendant appeared before the circuit court for his first appearance.[2] Although the record does not contain any report of those proceedings, the court's ruling was memorialized in a written order that same day. First, the court found that "[t]he proof [was] evident or the presumption great that the defendant ha[d] committed an eligible offense listed" within section 110-6.1(a) of the Procedure Code. The court's ruling expressly stated that there was a "call of someone waving a gun at [a] CTA station. Police arrived and matching [description] of call was running away. CPD stop[ped] and frisk[ed,] recovering a .380 cal handgun—prior felony offenses."

¶ 11    Second, the court found that "defendant pose[d] a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." Specifically, the court found that defendant "possessed a gun" and had a "history of violence including an armed robbery reduced," "attempt murder in 2002," "aggravated [battery] in 2002," and a "history of violence and using weapons." The court further noted that defendant had possessed a gun on the CTA and also reported having mental health issues.

¶ 12    Third, the court found that "[n]o condition or combination of conditions set forth" in section 110-10(b) of the Procedure Code could "mitigate the real and present threat to the safety of any person or persons or community based on the specific articulable facts of the case," and that "[l]ess restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific and articulable facts of the case." As to this point, the court found that defendant had "a history of events over [the] last 20 years," had fled from CTA and law enforcement, had possessed a weapon on the CTA, and suffered from "mental

---

[2]The State's brief indicates that on February 12, the Honorable Charles Beach presided over the initial pretrial detention hearing.

health issues." The court determined that electronic monitoring was not appropriate as it was "not designed to handle charges of violent offense" with "48 hours mvt." No appeal was taken from this order.

¶ 13    Finally, also on that same day, the court entered a "Healthcare Order," which indicated that defendant had reported that he was suffering issues related to "mental health." As such, the order required that defendant be promptly evaluated by appropriate healthcare personnel.

¶ 14                                    C. Other Proceedings

¶ 15    On March 7, 2024, an order entered by the circuit court indicated that defendant's charges had been superseded by direct indictment.[3] At some point prior to March 28, 2024, defendant filed a motion for pretrial release. However, this motion does not appear in the appellate record.

¶ 16                                    D. March 28 Hearing

¶ 17    On March 28, 2024, a hearing was held on what presumably was defendant's motion for release. However, this is not expressly indicated in the report of proceedings by any of the parties, including the court. Specifically, the following exchange occurred:

    "THE COURT: This is up for discovery check today.

    [DEFENSE COUNSEL]: It is up for detention. [Defendant] was just arraigned on Wednesday last week.

    THE COURT: Okay. Oh, all right. State, are you ready to proceed?

_____

[3]It is unclear when the new indictment was entered. Appellant's brief states that it was March 6, 2024, the State's brief asserts it to be March 7, and the supplemental record appears to show it as March 13. The record is further confusing in that a grand jury indictment indicates that there are six counts pending against defendant. In contrast, a criminal disposition sheet entered by the court on March 7 reflects that there were only four counts pending. However, the parties' briefs appear to be in agreement as to the remaining charges, which include one count of armed habitual criminal, one count of armed violence, one count of possession of 15 to 100 grams containing fentanyl, one count of unlawful use or possession of a weapon by a felon, and two counts of aggravated unlawful use of a weapon.

[THE STATE]: Yes, your Honor.

\*\*\*

[THE STATE]: Thank you, your Honor. The defendant is before you charged with a Class X armed habitual actual criminal, which is non-probationable felony. Based upon the charge, as well as, your Honor, I'll go into his background in a moment. Your Honor, the facts of this matter are on February 12th of 2024 at approximately 10:40 in the evening, police dispatched to a call of a person [waving] a gun at the CTA Red Line station.

\* \* \*

[THE STATE]: Police proceeded to the CTA Red Line and they observed the defendant running out the station matching the description that was given to the 911 dispatch.

Police approached the defendant and asked the defendant if he had any weapons on him to which he related no. The police conducted a protective pat-down and revealed a hard L-shaped object that was weighted in the defendant's pocket, they believed to be a firearm.

They then recovered a loaded—they did recover a loaded handgun, your Honor from the defendant's pocket[.]"

¶ 18                              1. The State's Continued Proffer

¶ 19    The State further indicated that during a custodial search, police officers recovered four small plastic bags of suspect heroin from defendant's person and learned that defendant did not have a valid Firearm Owner's Identification Card or a valid concealed carry license. A further

custodial search revealed additional suspect heroin for a total of 28 bags of suspect heroin on the defendant's persons.

¶ 20    Regarding defendant's background, the State proffered that defendant had seven prior felony convictions. His most recent conviction was in 202l, for possession of a controlled substance, for which he served one years' time at the Illinois Department of Corrections (IDOC), with discharge in August 2022. In 2007, defendant was convicted of aggravated battery, which had been reduced from an initial charge of attempted murder,[4] for which he served eight years at IDOC. In 2002, defendant was convicted of aggravated battery of a police officer "where he received it years in Illinois Department (sic)." In 2001, defendant was convicted of attempted aggravated robbery, for which he served four years at IDOC. In 2000, defendant was convicted of retail theft, for which he served two years at IDOC. Last, in 1992, defendant was convicted of two separate felonies for residential burglary, for which he received a four-year sentence at IDOC for both convictions.

¶ 21    In its conclusion, the State said that it believed the defendant to "pose a real and present threat to the safety of any person or persons in the community based on the articulable facts." It then requested that the court "deny [its] motion to release the defendant based upon the pretrial detention hearing."[5]

¶ 22                    2. Defendant's Argument in Mitigation and for Pretrial Release

¶ 23    In mitigation, defense counsel asserted that defendant was a lifelong Chicago resident who had attended Hyde Park High School and had received his GED. Defendant also earned an

---

[4]The State refers to the attempted murder charge as a conviction throughout parts of the record and in its brief, but the record does not confirm whether the charge had been reduced to aggravated battery prior to conviction.

[5]The police report filed in support of the petition lists February 11, 2024, as the date of arrest.

associate's degree in construction from Lakeland College. Defendant owned his own apartment and had a daughter attending college at Michigan State University.

¶ 24    Defense counsel further indicated that defendant had various health issues—specifically, that he was going blind in his left eye and was currently receiving treatment at University of Illinois Chicago. To prevent total blindness, defendant required surgery with extensive post-surgical care. Defense counsel further admitted that defendant suffered from substance abuse issues and had been planning to attend a 28-day rehabilitation program, if he were to be released.

¶ 25                              E. Circuit Court Oral Ruling

¶ 26    At the conclusion of the hearing, the following colloquy occurred:

> "THE COURT: Well, the court would note that the defendant has a long criminal history with several times having been in [IDOC], including violent crimes. The nature of this case where it's a man [waving] [sic] a gun, it's not just possessing a gun, he's [waving] [sic] it and then when the police arrive, he's running, those are concerns. In addition—and during the course of the search and arrest, he's found to have 28 baggies containing—which apparently contained heroin, charged with that in Count 3, you know, these *** dope and guns seem to go together in a bad way. I'm concerned about the safety of the public. He's a convicted felon. He's running around with dope and guns. I don't think electronic monitoring would be appropriate given this—the nature of his background and the charges before the [c]ourt that would be an appropriate consideration given that he gets two days off for personal care, there will be no monitoring—I don't know that the Sheriff's office is equipped to monitor what could be a violent felon. He's charged with a Class X felony, which is non-probationable.

THE COURT: It sounds like the State has a pretty good case. The proof is evident and the presumption great, the defendant will be detained."

¶ 27 Following the court's ruling, the court asked if the State had a "petition or order" for the court to sign. Subsequently, the following exchange occurred:

"[THE STATE]: I do have an order, your Honor, just one moment.

THE COURT: I mean, was he already in first appearance court? Was he held?

[THE STATE]: Yes, your honor.

[DEFENSE COUNSEL]: Yes.

[THE STATE]: He was held on, it looks like, February 12, 2024. There was a petition that we filed—

THE COURT: Okay.

[THE STATE]: —and it was granted at that time.

THE COURT: Okay. So, Mr. Washington, you [have] a right to appeal this decision. You have to do it within 14 days. So this was just recently arraigned. We need a date to check on the status of discovery?

[DEFENSE COUNSEL]: Yes, please, Judge. I would ask if we could go into May."

¶ 28                  F. Circuit Court Written Ruling

¶ 29 The court's oral ruling was memorialized in a written order, titled "Order after Pretrial Detention Hearing," which was entered that same day. First, the court found that the State had shown, by clear and convincing evidence, that the proof was evident or the presumption great that defendant had committed an eligible offense for pretrial detention, but the order did not list the specific offense. With regard to the second element, concerning real and present threat, the court

noted that defendant had been waving a gun in public, that controlled substances had been recovered, and that defendant had been "seen running." The court further found that defendant had an extensive criminal background, which included violent felonies. With regard to the third element concerning conditions, the court reiterated that electronic monitoring was improper, given the defendant's "actions during this incident and criminal background."

¶ 30    This appeal followed.[6]

¶ 31                                        II. ANALYSIS

¶ 32                                 A. The Procedure Code

¶ 33    The Procedure Code presumes that all persons charged with an offense shall be eligible for pretrial release prior to conviction. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022). Therefore, pretrial release may be denied *only* if a person is charged with a qualifying offense as delineated within section 110-6.1 of the Procedure Code and following the conducting of a corresponding hearing. *Id.* §§ 110-2, 110-6.1(e), (f). Moreover, pretrial detention should only be ordered to effectuate the Act's goals, which include reasonable assurance of an eligible person's appearance in court, ensuring the safety of any other person or the community, the prevention of any attempt or obstruction of the criminal justice process, and ensuring compliance with all conditions of release. *Id.* § 110-2(e).

---

[6]The record reflects that on April 1, 2024, defendant timely filed a notice of appeal from the court's March 28, 2024, interlocutory order denying pretrial release. See 725 ILCS 5/110-5(k) (West 2022); see also Ill. S. Ct. R. 604(h)(1)(iii), (h)(2) (eff. Dec. 7, 2023). During briefing, our supreme court amended Rule 604(h), which now provides that dispositions concerning pretrial release decisions shall be issued within 100 days of the filing of the notice of appeal. Ill. S. Ct. R. 604(h)(8) (eff. Apr. 15, 2024). Additionally, we note that, during the course of briefing, defendant requested an extension of time to file missing portions of the record, as well as additional time to file his brief, which we granted on June 4, 2024. As such, our disposition date was extended to July 17, 2024, for "good cause shown" as permitted by Illinois Supreme Court Rule 604(h)(8) (eff. Apr. 15, 2024).

¶ 34    Accordingly, the State, which bears the burden of proof, must show by clear and convincing evidence that (1) the "proof is evident or the presumption great" that the defendant has committed an eligible detainable offense (*id.* § 110-6.1(e)(1)); (2) a defendant "poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" (*id.* § 110-6.1(e)(2)); and (3) there is "no condition or combination of conditions set forth" within the Procedure Code that could mitigate that real and present threat to the safety of any person, persons, or the community, based on the facts of the case (*id.* § 110-6.1(e)(3)). If the court determines that the State has met its burden on its petition, the court must make a written finding summarizing its reasons for pretrial detention. *Id.* § 110-6.1(h).

¶ 35    The appeal before us involves a different subsection of the Procedure Code following an order of initial detainment, which shares some commonalities but is not identical. See *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14. Specifically, section 110-6.1(i-5) provides that,

> "[a]t each subsequent appearance of the defendant before the court, the judge must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2022).

See also *People v. Harris*, 2024 IL App (2d) 240070, ¶ 37 (applying this subsection to motions made by a party or on the court's own motion). Both the State and defendant may appeal an order resulting from those proceedings. 725 ILCS 5/110-6.1(j), (k) (West 2022).

¶ 36    With this framework in mind, we now turn to the merits of defendant's appeal.

¶ 37                              B. Standard of Review

¶ 38 Defendant asserts that section 110-6.1(i-5) of the Procedure Code does not prescribe a standard of proof or burden upon any party, whereas sections 110-2(b) and 110-2(c) place the burden on the State to demonstrate that a person constitutes a real and present theat. Nevertheless, defendant posits that the State's burden should be clear and convincing evidence, citing *In re Tiffany W.*, 2012 IL App (1st) 102492-B, while also observing that other courts have applied an abuse of discretion standard to detention reviews, citing *Thomas*, 2024 IL App (1st) 240479, with some even advocating for *de novo* review, citing the concurring opinion in *People v. Saucedo*, 2024 IL App (1st) 232020. Regardless of either standard, defendant asserts that the result is the same, in that he is not a safety threat in need of continued detention. The State responds that abuse of discretion is the proper standard for continued detention findings, citing *Thomas* and *People v. Mulbrandon Casey*, 2024 IL App (3rd) 230568.

¶ 39 As noted prior, section 110-6.1(i-5) requires that, at any subsequent appearance of a defendant following initial detention findings, the circuit court must conduct some review of the appropriateness of defendant's continued detention. Although it must similarly make findings based on the specific and articulable facts of the case, continued detention determinations "are not subject to every statutory requirement that applies" to the initial hearing. *Harris*, 2024 IL App (2d) 240070, ¶ 37; see *Mulbrandon Casey*, 2024 IL App (3d) 230568, ¶ 13 ("[T]he Code does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required at the initial hearing."). Rather, the court need only consider whether continued detention is necessary to avoid a safety threat or to prevent willful flight.

¶ 40 The appropriate standard of review for pretrial detention orders remains unresolved and the subject of considerable debate among the appellate districts, and even among different

divisions here in the First District. See *People v. Parker*, 2024 IL App (1st) 232164, ¶¶ 46-47

(discussing and collecting cases on court split). Continued pretrial detention orders have not

avoided this debate, as some districts and divisions of our appellate court have applied the abuse

of discretion standard for ultimate decisions concerning pretrial release (see *Mulbrandon Casey*,

2024 IL App (3d) 230568, ¶¶ 11-13; *Thomas*, 2024 IL App (1st) 240479, ¶ 16) and at least one of

our sister districts has applied the manifest weight standard (see *People v. Alcantara*, 2024 IL App

(5th) 240195-U, ¶ 33). Regardless, absent any further direction from our supreme court on this

significant issue, we need not determine which standard applies here because, as further discussed

below, our ultimate disposition would be the same under either standard.

¶ 41                                   C. Arguments

¶ 42     Procedurally, the State contends that defendant's appeal is forfeited for a variety of

reasons.[7] It first points out that defendant's basis for appeal as contained within his notice of appeal

explicitly challenged the State's failure to meet its burden in demonstrating that there were no

conditions or combination of conditions to mitigate any threat posed by defendant. According to

the State, this language tracks the defendant's original detention order of February 12, 2024, which

had not been previously appealed. Assuming that defendant actually challenges the original

---

[7]The State also argues that defendant's claim that the circuit court improperly conducted the continued detention hearing was not raised in a motion filed before the circuit court and thus cannot be considered today. However, this contention is meritless. It is true that Supreme Court Rule 604(h)(2) now requires the filing of a motion to reconsider an order granting or denying pretrial release before the circuit court prior to a notice of appeal. Ill. S. Ct. R. 604(h)(2) (eff. April 15, 2014). Thus, if defendant fails to raise any issue in that motion for relief, such contentions are deemed waived on appeal. *Id.* However, defendant's notice of appeal was filed on April 1, 2024, and under the operative version of Rule 604(h)(2) at the time, defendant was only required to file a notice that described both the relief and grounds for relief requested, as well as a form order notice prescribed by Rule 606(d). See Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023); 606(d) (same); *People v. Martin*, 2023 IL App (4th) 230826, ¶ 18. Thus, defendant was not required to file a motion before the circuit court outlining the issues he intended to appeal.

detention order, the State argues that our court does not have jurisdiction to review those findings, as an appeal to that order would be untimely under the Procedure Code and Supreme Court Rule 604(h)(2). Additionally, the State contends that the issues outlined in defendant's memorandum are also forfeited pursuant to Rule 604(h)(2). Specifically, the State asserts that defendant's two bases for appeal, that the circuit court improperly conducted the continued detention hearing, and that the court incorrectly determined that defendant was a real and present threat, cannot be considered because these are not the same issues raised in defendant's notice of appeal.

¶ 43     We turn to the notice of appeal. The form order indicates that defendant expressly sought to challenge the findings and rulings made by the court on March 28, 2024, and not the February 12, 2024 initial detention order. However, upon further examination of the notice of appeal, we agree with the State that defendant's notice and the memorandum filed in support of the appeal are inconsistent. Specifically, on the form order, defense counsel did not check the box indicating that he sought to challenge any findings that defendant constituted a real and present danger. Instead, counsel solely checked the following box:

> "The State failed to meet its burden by proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case, or defendant's willful flight."

Defense counsel then wrote, in a single sentence, that defendant "could be placed on [EMS] or pretrial curfew." Thus, defendant did not challenge what would have been the sole issue before the court on a continued detention hearing—namely, that "continued detention [was] necessary to avoid a real and present threat to the safety of any person or persons or the community, based on

the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5).[8]

¶ 44    In contrast, defendant's brief is dedicated to the lack of evidence proffered in support of him continuing to be a real and present threat, none of which was actually discussed by defense counsel during the hearing or raised in the notice of appeal. Moreover, defendant does not make any comment on the discrepancies between the filed brief and what was expressly challenged in the notice.

¶ 45    Initially, we must comment on defendant's barebones notice filed in support of his appeal. At the time of filing, our rules required defendant to describe his grounds for appeal in his notice in *detail*. See Ill. S. Ct. R. 604(h)(2); 606(d); see *Martin*, 2023 IL App (4th) 230826, ¶ 19 ("It would be especially inappropriate to overlook the insufficiency of defense counsel's rote, mechanical, and nonspecific statements that could be (and in our brief experience, have been) applied generically to any Rule 604(h) appeal.") It is well-established that "supreme court rules have the force of law," "are not suggestions," and "are not aspirational." (Internal quotations and citations omitted.) *Martin*, 2023 IL App (4th) 230826, ¶ 18. Thus, although we are authorized to liberally construe the requirements of supreme court rules governing appeals, we also are not required to excuse noncompliance with filing requirements.

¶ 46    However, the inconsistencies between the notice of appeal and the filed memorandum are more concerning. It was presumably defendant's motion for release that triggered the March 28,

---

[8]We acknowledge that the form order notice of appeal does not specifically contain a section for a party to check off concerning *continued* detention proceedings. Rather, the form order is entitled "Denial or Revocation of Pretrial Release" and lists the statutory elements by which a court assesses initial detention hearings. However, there is an "other" box on the form that could have allowed for a more specific challenge.

2024 hearing, and although defendant had already been initially detained one month prior, defense counsel's notice of appeal does not challenge what could only be the sole issue before the court, namely whether defendant continued to constitute a real and present threat. Instead, defense counsel challenged the portion of the circuit court's order concerning the propriety of EMS. Although we acknowledge that factual determinations of whether to impose conditions utilize similar factors as those used to assess whether a defendant is a real and present threat, the issue of continued detention has a narrowed focus. Compare 725 ILCS 5/110-6.1(g)(9) (West 2022) (stating that factors used to assess a defendant's real and present threat may include considerations contained within article 5 of the Procedure Code, which assesses appropriate bail conditions, if any, based on similar factors); 725 ILCS 5/110-5(a) (West 2022); *Id.* § 110-6.1(i-5) (whether "continued detention is necessary to avoid a real and present threat *** based on the specific articulable facts of the case[.]") Thus, we agree with the State that the issues outlined in defendant's filed memorandum regarding the court's finding of him being a real and present threat are forfeited.

¶ 47    On that point, however, and notwithstanding forfeiture, we pause to comment on the circumstances of the March 28, 2024 hearing. Defendant's first argument for reversal, which also was not raised in the notice of appeal and thus must also be considered forfeited, was that the circuit court improperly assessed the merits of his continued detention by the wrong section and standard of the Procedure Code. Specifically, defendant asserts that section 110-6.1(i-5) should be assessed by "subsequent review" standards, which are distinctive from initial detention hearings, citing *Thomas*, 2024 IL App (1st) 240479, in support. Defendant reasons that the court did not follow protocol when it determined that the proof was evident or presumption great that defendant committed a detainable offense, and as such engaged in a full-blown detention hearing without having the statutory authority to do so, citing *People v. Jones*, 2024 IL App (1st) 240515-U. In

response, the State acknowledges that the circuit court "superfluously" discussed the strength of the State's case against defendant in its ruling, but maintains that it did not conduct a "full-blown hearing."

¶ 48    Based on the report of proceedings and documentary record, it is clear to us that there was confusion regarding the proper procedures for the continued detention hearing. First, it appears that the March 28, 2024 hearing was triggered by defendant's motion for release. However, as we have noted prior, no such motion was included in the record, which we add was defendant's burden to bear. Therefore, we cannot discern the reasons articulated by defense counsel concerning defendant's continued detention beyond what was stated during the hearing.

¶ 49    Next, we can glean from the record that it was unclear to the circuit court at what stage of proceedings defendant's case was currently situated. However, this confusion can be attributed to all involved. Beginning with the initial exchange between the parties, the circuit court appeared to believe the matter was placed on its docket for status on discovery. Although the circuit court was corrected by defense counsel that the matter was up for "detention," defense counsel did not indicate to the court that it was actually up for continued detention proceedings, let alone on his own motion for release. Moreover, the court never acknowledged that it had read any such motion, let alone received a copy of it to begin with. Finally, despite the matter being procedurally up on defendant's motion, the State proceeded first and proffered the reasons for why it believed detention was necessary. Indeed, the State never once indicated that defendant was already detained until the very end of its argument, when it included a request for relief that defendant's motion should be denied "based upon the pretrial detention hearing."

¶ 50    Moving forward, it is also clear from the court's oral ruling and subsequent post-ruling comments that it believed it was conducting a full-fledged pretrial detention hearing. The court

made findings regarding all three elements required for an initial detention hearing, including that "the proof was evident and the presumption great" that defendant had committed the charged crimes. Although the court certainly elaborated as to why it perceived defendant to be a safety threat based on the nature of the charges and defendant's criminal background, which is an element discussed at both initial and continued detention reviews, the court also discussed the impropriety of EMS as a potential condition for release, a finding relegated to initial petitions. Further, the court asked if the State had a "petition or order" for it to sign and then asked for clarification as to whether this had been defendant's first appearance, if he had already been detained prior, and when he had been arraigned.

¶ 51    Finally, we look to the written order entered by the court that same day. The record reflects that the court entered findings on all three elements required for an initial detention hearing. See 725 ILCS 5/110-6.1(h) (West 2022). Given that this matter was purportedly before the court to assess defendant's continued detention, the court did not need to conduct such an analysis on a subsequent detention order and solely needed to address whether continued detention was necessary to avoid a safety threat or prevent willful flight from prosecution. See *id.* § 110-6.1(i-5); *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 27.

¶ 52    However, our observations are not fatal to the circuit court's ultimate finding that defendant should continue to be detained. Our court has recognized that the Procedure Code does not provide for repeated, comprehensive detention hearings. See *People v. Stokes*, 2024 IL App (1st) 232022-U, ¶ 36. The State also does not need to file a new petition each and every time it seeks continued detention of a given defendant, which it did not do here. See 725 ILCS 5/110-6.1(d)(2) (West 2022) (the State may file a second or subsequent petition where new facts have now come to light that were unknown or not obtainable at time of initial petition filing).

¶ 53    Further, there are a growing number of cases indicating that, even when the circuit court conducts a hearing and makes findings for continued detention using the three statutory factors usually required for an initial detention hearing, such findings are not generally or necessarily fatal to our review. See *Thomas*, 2024 IL App (1st) 240479, ¶ 14 (even though court assessed evidence for continued detention by three elements required for initial detention, its findings "necessarily encompassed the continued detention finding required by section 110-6.1(i-5)"); *Mulbrandon Casey*, 2024 IL App (3d) 230568, ¶ 13 (propriety of continued detention to avoid a real and present threat to the safety of any person, persons, or the community "necessarily entails consideration of the threat or flight risk posed by a defendant and the potential mitigation of such threat or flight risk by conditions of release," but "the Code does not require the court to again make specific findings" required at the initial detention hearing); *Harris*, 2024 IL App (2d) 240070, ¶ 37 ("[S]ubsequent detention determinations are not subject to every statutory requirement that applies to initial detention hearings."); *Stokes*, 2024 IL App (1st) 232022-U, ¶ 36 (even where a new judge has been assigned to a case following initial detainment order, a hearing pursuant to section 110-6.1(a) is not required to assess continued detention).

¶ 54    Of course, although there are fewer findings for the court to make in a continued detention hearing, the court must still expressly adhere to the statute in finding that continued detention is necessary. See *People v. Shaw*, 2024 IL App (1st) 232021-U, ¶¶ 25-26 (continued detention hearings still require findings of a defendant's real and present threat based on the specific and articulable facts of the case and cannot be based on acceptance of a different judge's prior ruling for initial detention); *Stokes*, 2024 IL App (1st) 232022-U, ¶¶ 27-28, 31-32; but see *Jones*, 2024 IL App (1st) 240515, ¶¶ 5-6 (although acknowledging that subsequent detention hearings do not

require the same type of proceedings as initial detention hearings, otherwise determining that case should be remanded to conduct a continued detention inquiry).

¶ 55    Here, the court also appeared to make full-fledged findings regarding defendant's detention, but only did so after hearing the State's proffer and taking into account defendant's arguments for mitigation. Notwithstanding the confusion apparent from the report of proceedings, we do not believe the court's overly comprehensive findings exceeded its powers under the Procedure Code. Put simply, the court still found that defendant constituted a real and present threat, and thus still made the requisite finding required under section 110-6.1(i-5). Moreover, as discussed above, this type of hearing requires fewer findings than what would otherwise be required on an initial detention petition, which implies that the court found that the State had satisfied an even more stringent burden of proof than necessary.

¶ 56    Finally, when examining the court's overall ruling, we cannot say that the ultimate decision to detain was unjustified. In determining whether a given defendant continues to pose a real and present threat to the safety of the community, the Procedure Code allows courts to consider, among others, the nature and circumstances of the charged crimes; defendant's history and characteristics, including prior criminal and psychological background; defendant's access to any weapons; and any other factors speaking to defendant's propensity or reputation for violent or assaultive behavior. See 725 ILCS 5/110-6.1(g). Although we are unable to evaluate whether defendant's motion for release made any such argument as to those factors, the record reflects that such factors were considered by the court in its oral and written rulings. Specifically, the court noted the dangers of defendant's firearm possession in a public place, in which he was alleged to have been waving the gun, in addition to his possession of various drugs, especially after defense counsel admitted during the hearing that defendant suffered from substance abuse issues and was seeking treatment.

See *id.* § 110-6.1(g)(1) (assessing the nature and circumstances of any offense charged, including whether the offense involved a weapon); *id.* § 110-5(a)(1). The court also pointed to defendant's extensive criminal history in its discussion of whether any conditions were appropriate, which included violent crimes and time served at IDOC. See *id.* § 110-6.1(g)(2)(A) (assessing prior criminal history indicative of violent, abusive, or assaultive behavior, including prior criminal proceedings). Moreover, we note that the offense of armed habitual criminal is one "specifically aimed at the dangers associated with repeat felons possessing firearms." *Hongo*, 2024 IL App (1st) 232482, ¶ 35; see also *People v. Lee*, 2024 IL App (1st) 232137, ¶ 28; *Martin*, 2018 IL App (1st) 152249, ¶ 23. Indeed, defendant's status as a convicted felon means he is specifically prohibited from possessing a firearm, regardless of whether, as noted by defendant, the gun is loaded or not. See 720 ILCS 5/24-1.1 (West 2022); 430 ILCS 65/1 (West 2022); *Hongo*, 2024 IL App (1st) 232482, ¶ 35 (possession of a firearm by a convicted felon "goes directly against the legislature's stated purpose of promoting and protecting the safety of the public from the unlawful possession of firearms by certain individuals.") (quoting *People v. Davis*, 2023 IL App (1st) 231856, ¶ 28)).

¶ 57    As such, when reviewing the record as a whole, we do not find reversible error in the circuit court's ultimate determination that defendant's continued detention was necessary. Accordingly, we affirm the detention order.

¶ 58                                III. CONCLUSION

¶ 59    For the reasons stated, we affirm the judgment of the circuit court.

¶ 60    Affirmed.