2026 IL App (1st) 252408-U

SECOND DIVISION
February 17, 2026

No. 1-25-2408B

**NOTICE**:  This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 CR 1166401 |
| | ) | |
| SJANDEL HUNTER, | ) | Honorable Timothy Joyce and |
| | ) | Shauna Boliker, |
| Defendant-Appellant. | ) | Judges Presiding. |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the circuit court's decision ordering defendant to remain in custody over his contention that he does not pose a danger to the community.

¶ 2    On October 31, 2024, the State charged defendant Sjandel Hunter with first degree murder for allegedly shooting and killing Tyrone Rush on January 14, 2024. The State petitioned the circuit court to detain defendant, and the circuit court granted the petition, finding that the State had met its burden showing that the circumstances of the offense made defendant ineligible for

pretrial release. Defendant does not challenge the October 31, 2024, initial detention order. Rather, he challenges the circuit court's subsequent denial of petition for pretrial release on November 13, 2025. For the following reasons, we affirm.

¶ 3                                   I. BACKGROUND

¶ 4     At the initial pretrial detention hearing on October 31, 2024, the State proffered the following based on multiple sources of video surveillance footage.[1] On January 14, 2024, defendant entered a fast-food restaurant "wearing a distinguishable jacket with his face visible on the interior surveillance video." The victim, Rush, entered the restaurant and had a brief exchange with defendant during which he asked defendant for money. Defendant left the restaurant. Outside surveillance cameras captured defendant walking along the sidewalk and then returning to the entrance of the restaurant. At the entrance, the two spoke again. Rush began walking away and defendant followed him. Defendant removed a handgun from his right waistband and held it behind his upper right thigh as he followed Rush. Rush turned around and defendant fired multiple shots at him. Rush "fell to the ground, and [defendant] then stood over [him] and fired additional multiple rounds" into Rush's body. Defendant fled on foot. The surveillance video is not included in the record before us, and from what we can tell from the record, the court had still footage available, not video, at the hearing.

¶ 5     Police responded on scene and Rush was transported to the hospital where he was pronounced deceased. The police found nine shell casings at the scene; three projectiles were located in Rush's body during the autopsy. The police used the restaurant's internal surveillance footage to create a seeking-to-identify bulletin, and an anonymous tip advised that the person in

---

[1]Again, defendant does not challenge this decision on appeal; however, the State's proffer provides relevant context.

the bulletin was defendant. Using that information, police located a person who knew defendant and identified him in the surveillance video stills. Defendant's manager from his place of work also identified him in the stills. A cashier from the restaurant identified defendant in a lineup, stating that defendant was the customer inside the restaurant who had interacted with Rush. Defendant's cell phone connected to a cell tower in the area of the incident. Further, defendant's cash app account was registered in his name and provided a receipt for purchase that was texted to his cell phone on the day of the incident. Finally, a search warrant executed on defendant's iCloud uncovered a photograph of defendant in the same jacket he wore at the time of the homicide.

¶ 6    As to defendant's background, the State pointed out he had a pending misdemeanor for carrying a gun without a license in Indiana. He had a 2021 felony conviction for possession of a firearm with a defaced serial number for which he was imprisoned for two and a half years. That same year, he had a misdemeanor theft conviction.  Based on the foregoing, the State argued that there was clear and convincing evidence that defendant committed first degree murder, that he posed a threat to the community, and that no less restrictive conditions could mitigate that risk.

¶ 7    Defendant argued that the identification evidence was insufficient. At that point, only stills of the surveillance footage were introduced; the video apparently was not available at that time. Further, the defense argued that there was some bias in the lineup. Also, the defense had not received the data from the cash app defendant used for the purchase, so it could not verify the time and location of the purchase. As to defendant's dangerousness, he pointed out that he did not have any convictions for violent crimes.

¶ 8    The court conducted a thorough analysis of the three elements of pretrial detention on the record. It also issued written findings, noting the State had met its burden in proving defendant

was ineligible for pretrial release. The court therefore granted the State's petition. Defendant does not challenge that decision.

¶ 9    On August 4, 2025, defendant filed a petition for pretrial release, arguing that he posed no danger to the community. Defendant pointed out that in the nine months between the incident and the arrest, he did not commit any crimes or threaten anyone. Defendant attached several letters from friends and family, describing him as a kind and loving brother, cousin, grandson, and friend. On August 18, 2025, the circuit court held a hearing on the petition. The circuit court found that based on the totality of the circumstances, including the cash app data, surveillance stills, and the distinctiveness of defendant's clothing, the State had shown by clear and convincing evidence that the presumption was great defendant shot and killed Rush. The court also found that defendant's background related to firearms and the manner in which the offense was committed (Rush suffering 10 wounds) spoke to defendant's dangerousness to the community. The court denied defendant's petition for pretrial release.

¶ 10    On November 13, 2025, defendant filed a motion for relief under Supreme Court Rule 604(h)(2) (eff. April 15, 2024). He argued that the State did not prove by clear and convincing evidence that (1) he was the shooter, (2) he posed a threat to the safety of any person or the community because his history did not indicate evidence of violent or abusive behavior, and (3) no condition or combination of conditions could mitigate the real and present threat to the safety of any person of the community defendant posed. The circuit court denied the motion for relief and issued a written order mandating defendant's continued detention.

¶ 11    Also on November 13, 2025, defendant filed a notice of appeal, challenging the court's denial of his motion for relief.

¶ 12                                II. ANALYSIS

4

¶ 13    On appeal, defendant challenges the circuit court's November 13, 2025, denial of his motion for relief from detention.

¶ 14    Under section 110 of the Code of Civil Procedure, all defendants are presumed to be eligible for pretrial release, unless the State can show, by clear and convincing evidence, that a particular defendant should be denied pretrial release. 725 ILCS 5/110-6.1(e) (West 2024). Clear and convincing evidence is "that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12. At the initial pretrial detention hearing, the State must show, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense, (2) the defendant's pretrial release poses a real and present threat to the safety of the community, and (3) that less restrictive conditions would not avoid that threat. 725 ILCS 5/110-6.1(d), (e) (West 2024).

¶ 15    However, a different standard applies to pretrial release hearings after the initial one, such as the one defendant challenges here. Although the Pretrial Fairness Act does not expressly allow a defendant to file a "motion for pretrial release" after the circuit court has ordered pretrial detention, we have construed such motions as invoking the court's obligation under section 110-6.1(i-5) (725 ILCS 5/110-6.1(i-5) (West 2024)) to determine whether *continued* pretrial detention is necessary. See, *e.g.*, *People v. Harris*, 2024 IL App (2d) 240070, ¶ 37; *People v. Washington*, 2024 IL App (1st) 240894-U, ¶¶ 15, 51-55; *People v. Castle*, 2024 IL App (1st) 240669-U, ¶¶ 3, 18-19; and *People v. Long*, 2023 IL App (5th) 230881, ¶¶ 9, 14. Section 110-6.1(i-5) provides that once the circuit court has ordered pretrial detention, at each subsequent appearance of the defendant, the "judge must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable

facts of the case." 725 ILCS 5/110-6.1(i-5) (West 2024). However, the Act "does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required at the initial hearing." *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13. "Rather, the court need only consider whether continued detention is necessary to avoid a safety threat or prevent willful flight." *Washington*, 2024 IL App (1st) 240894-U, ¶ 39. The "nature and circumstances of the offense charged is the *prime* consideration in determining the conditions of release, if any *** , and in denying pretrial release ***, including in making the dangerousness determination ***." (Emphasis in original.) *People v. Carpenter*, 2024 IL App (1st) 240037, ¶ 14.

¶ 16    Where, as here, the State proceeds by proffer, our standard of review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 17    Here, the circuit court considered whether continued detention was necessary to avoid a safety threat and considered the nature and circumstances of the offense charged. In ordering defendant's "detention to stand," the court noted that

> "notwithstanding defendant's arguments about no background of violence, the fact that Mr. Hunter has a background relating to firearms and the manner in which this offense was committed where the victim suffered 10 wounds, 9 casings were found all fired from the same gun, does tend to speak to what the Pretrial Fairness Act encompasses when it speakers to dangerousness to the community."

Thus, as required by statute, the court here found that defendant is dangerous, would continue to pose a threat to the community if released, and ordered his continued detention. The circumstances of the offense – including standing over the victim and shooting him multiple times while he was already down, all due to an apparent money issue, coupled with a history of firearm offenses – demonstrates the violent nature of defendant and the danger he presents to the community.

Defendant submitted letters from family and friends that that attested to his peaceful nature. Nonetheless, in weighing them against the evidence adduced by proffer, we are not persuaded that the letters should be given greater weight on the issue of dangerousness than the violence reflected in the incident itself, which was captured on surveillance video. We find no error on the part of the circuit court.

¶ 18                                III. CONCLUSION

¶ 19    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 20    Affirmed.