2024 IL App (1st) 232021-U

SIXTH DIVISION

January 22, 2024

No. 1-23-2021B

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) ) | |
| v. | ) ) | No. 234005288 |
| JAMARI SHAW, | ) ) | Honorable David L. Kelly and Kristyna C. |
| Defendant-Appellant. | ) | Ryan, Judges, presiding. |

JUSTICE C.A. WALKER delivered the judgment of the court.
Presiding Justice Oden Johnson concurred in the judgment.
Justice Tailor dissented.

**ORDER**

¶ 1     *Held:*     We vacate the circuit court's October 17, 2023 order finding defendant's continued detention pending trial was necessary, and remand for a new proceeding, because the court did not base its finding on the specific articulable facts of the case.

¶ 2     Defendant Jamari Shaw appeals from the circuit court's order continuing his pretrial detention per article 110 of the Code of Criminal Procedure of 1963, as amended by Public Act 101-652, § 10-255, and Public Act 102-1104, § 70 (eff. Jan. 1, 2023) (725 ILCS 5/110-6.1 (West 2022) (the Act). He argues that the court improperly based its continued detention finding on a previous judge's findings, and not the specific articulable facts of the case, as the Act requires. We agree with Shaw, and vacate and remand for a new proceeding, at which the circuit court shall determine whether Shaw's continued detention is necessary based on the specific articulable facts of the case.

¶ 3                               BACKGROUND

¶ 4     Shaw was arrested on October 10, 2023, and charged with one count of aggravated vehicular hijacking with a firearm (720 ILCS 5/18-4(a)(4) (West 2022)). The State filed a petition for pretrial detention on October 13, 2023, and the circuit court held a hearing on the petition on October 15, 2023. Judge David L. Kelly presided over the hearing.

¶ 5     At the hearing, the State sought to detain both Shaw and a co-defendant (who is a not a party to this appeal) pending trial. The State's attorney proffered that on October 10, 2023, the victim was in a Dunkin Donuts parking lot in Cicero, Illinois, at around 8:49 p.m., with her two grandchildren (ages 9 and 3), her 13-year-old daughter, and two of the daughter's friends. The group was in the victim's vehicle when another vehicle pulled in front and blocked them in. An individual holding a firearm with an extended clip exited the second vehicle, approached the victim's vehicle, and instructed the victim to "get out." Two other individuals exited the second vehicle holding firearms, one of whom pointed a firearm at the victim's daughter. Everyone exited the victim's vehicle, which the three individuals holding firearms then entered. Shortly thereafter,

2

one of the offenders exited the victim's vehicle, aimed a firearm at the victim, and demanded her keys, which she provided. Chicago police officers obtained video of this incident.

¶ 6     Approximately eight minutes later (at 8:57 p.m.), officers located the victim's vehicle and began a pursuit after unsuccessfully attempting a traffic stop. The pursuit also involved a police helicopter, and continued to the 8300 block of Langley Avenue in Chicago, where the victim's vehicle stopped and four individuals exited and fled on foot. Officers "immediately" captured one of those individuals, a female, and pursued the other three individuals to a third-floor unit of a nearby apartment building. After forming a perimeter around the building and entering the unit, officers located five individuals inside, including Shaw and his co-defendant. The officers identified Shaw and his co-defendant as two of the individuals they pursued on foot. A search warrant was later executed in the apartment, where officers recovered ammunition, a loaded magazine, seven cell phones, and a handgun with an extended magazine.

¶ 7     Regarding Shaw's criminal record, the State proffered that he had an "informal station adjustment" for aggravated possession of a stolen vehicle from 2022, along with a pending case in Iowa for "participating in a riot."

¶ 8     Counsel for Shaw's co-defendant pointed out that three individuals entered the victim's vehicle at Dunkin Donuts parking lot, but four exited following the vehicular pursuit. Shaw's counsel questioned the identification evidence, representing that one of the victim's stated the offenders wore masks during the incident. Counsel emphasized that the surveillance had a significant gap because it apparently did not capture when the fourth individual entered the victim's vehicle following the initial incident. Additionally, counsel contended there were "missing guns"—as officers recovered only one firearm from the apartment, and another from the female offender—and no recovery of the victim's keys. Regarding Shaw's history, his counsel

suggested Shaw was not a danger to the community because the State only "tendered two criminal history points," and the allegations regarding the Iowa case were "vague." Finally, counsel stated that Shaw and his girlfriend were expecting a child, he took care of his mother and grandmother, and participated in bible study. In response, the State's attorney disputed there were gaps in the surveillance, and emphasized that the firearm found in the apartment had an extended clip, like the firearm used during the incident.

¶ 9    On questioning from Judge Kelly, the State affirmed it would not present a victim identification of either Shaw or his co-defendant. Instead, the State represented that the identification evidence consisted of "the initial surveillance video, them getting into the car, and them getting stopped at the end of their flight and identified."

¶ 10   The circuit court granted the State's petition and ordered Shaw detained pending trial, finding that the State had established with clear and convincing evidence that Shaw was likely one of the offenders, based on the short time frame between incident, pursuit, and arrest. Regarding whether Shaw posed a real and present threat to the community, the court stated, "this Court can't imagine anything more dangerous *** [than] to have handguns with extended magazines pointed at [the victims] for a car," and continued that the victims had to witness "handguns pointed both at their mother, their relatives, and their friends." The court did not find that Shaw posed a willful flight risk. Finally, the court found there were no conditions that could mitigate the risk of Shaw's release because he allegedly committed "extremely violent acts" in a "commercial area," and added that the vehicular pursuit also put the public in danger. The court continued, "Based on those violent actions, that flight, based on your criminal history *** this Court does not believe at this time that it can fashion any *** combination of conditions that would mitigate the risk" of release.

4

¶ 11    In Judge Kelly's pretrial detention order, he wrote that the proof was evident and presumption great that Shaw was "identified as an individual who exited [the] victim's car shortly after [the] victim was carjacked at gunpoint," and that Shaw posed a real and present threat because he "participated in armed vehicular hijacking where guns were pointed at adult victim and minor children."

¶ 12    The matter was continued to October 17, 2023, before Judge Kristyna C. Ryan. Following a brief scheduling discussion, Shaw's attorney stated that the circuit court had "to make a finding that [Shaw's] continued detentions is necessary." The court reviewed the allegations and Shaw's scores for the "new criminal activity" and "failure to appear" criteria, then stated, "Based on all of the prior documentation, the charges, the allegations, I will continue to find the detention is necessary." In so finding, the court mistakenly represented that Judge Kelly had also based Shaw's detention on the risk of willful flight.

¶ 13    Defense counsel objected, arguing that the circuit court had to make a new factual finding before it could continue Shaw's detention, which would require the State to make a new proffer. The State disagreed, emphasizing that the pretrial detention hearing took place only 48 hours ago, and no "material change" had occurred in the interim. Defense counsel maintained Judge Ryan had to make independent findings, and could not only rely on Judge Kelly's findings. The State responded that a new factual finding was unnecessary. The court agreed, stating that if a defendant "has a court date every two or three days and nothing has changed *** I don't think that there's a need to then go back," and then clarifying, "I'm not making a factual finding. I based my decision on the petition and the findings of another judge."

¶ 14    On October 27, 2023, Shaw filed his notice of appeal. In the notice of appeal form, Shaw checked a box indicating that he claimed he was denied an opportunity for a fair hearing, and

specified that Judge Ryan did not have a "sufficient basis" for finding that Shaw remained a real and present threat because she "lacked sufficient knowledge of the case to make the necessary finding."

¶ 15                                           JURISDICTION

¶ 16    Shaw appeals from the circuit court's order of October 17, 2023. He filed his notice of appeal on October 27, 2023, and thus the notice was timely, and this court has jurisdiction, per the Act. See 725 ILCS 5/110-6.1(j) (West 2022); Ill. S. Ct. R. 604(h) (eff. Oct. 19, 2023).

¶ 17                                            ANALYSIS

¶ 18    On appeal, Shaw's primary argument is that Judge Ryan's continued detention finding was improper because she did not base her finding on the specific articulable facts of the case, as required by the Act. Shaw also argues Judge Ryan erred by finding that his continued detention was necessary based on the risk of his willful flight from prosecution, and the written order of October 17, 2023, did not meet statutory requirements.

¶ 19    Under the Act, a criminal defendant is presumed eligible for pretrial release, and cannot be detained pending trial unless the State files a petition for pretrial detention. 725 ILCS 5/110-6.1(a), (a)(1)-(8); 725 ILCS 5/110-6.1(e) (West 2022). In the petition, the State, generally, must show that the defendant is charged with a qualifying offense, and allege one of two bases for detention—that a defendant poses a "real and present threat," or "has a high likelihood of willful flight to avoid prosecution." *Id.* § 110-6.1(a)(1)-(7); § 110-6.1(a)(8). After the State files the petition, the circuit court must conduct a pretrial detention hearing, during which the parties can proceed by way of proffer to present the anticipated evidence of the case. *Id.* § 110-6.1(c)(2); § 110-6.1(e); § 110-6.1(f)(2). At the hearing, the State bears the burden to establish by clear and convincing evidence that "the proof is evident or the presumption great that the defendant" committed the charged

crime, and, in relevant part, that the defendant poses a "real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," and that "no condition or combination of conditions *** can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case *** or (ii) the defendant's willful flight." *Id.* § 110-6.1(e)(1)-(3).

¶ 20   If, following the hearing, the court grants the State's petition, it must issue a detention order "summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or prevent the defendant's willful flight from prosecution." *Id.* § 110-6.1(h). If the court orders detention, the Act further requires that, "At each subsequent appearance of the defendant before the court, the judge must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." *Id.* § 110-6.1(i-5).

¶ 21   Regarding our standard of review, there has been disagreement amongst the Illinois Appellate Districts about whether all circuit court decisions regarding pretrial detention are reviewed for an abuse of discretion, or whether there is a two-tiered system, where the circuit court's factual findings are reviewed for manifest weight of the evidence, while the ultimate detention decision is reviewed for abuse of discretion. See *People v. Herrera*, 2023 IL App (1st) 231801, ¶¶ 22-24 (describing the differing approaches through examples from the Fourth and Fifth Districts). We need not resolve this issue because Shaw only challenges Judge Ryan's conclusion, and there is consensus amongst the Districts that this is reviewed for abuse of discretion. See

*People v. Long*, 2023 IL App (5th) 230881, ¶ 16. An abuse of discretion occurs "when the circuit court's decision is 'arbitrary, fanciful, or unreasonable,' or where 'no reasonable person would agree with the position adopted by the trial court.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9 (quoting *People v. Becker*, 239 Ill. 2d 215, 234 (2010)).

¶ 22    Shaw first argues that Judge Ryan's finding that his continued detention was necessary to avoid a real and present threat constituted an abuse of discretion because the Act requires the circuit court to base this determination on the specific articulable facts of the case.

¶ 23    The record shows Judge Kelly conducted a pretrial detention hearing on October 15, 2023, at which the parties proffered evidence. Two days later, on October 17, Judge Ryan ordered Shaw's continued detention after a brief proceeding where neither side proffered evidence. Judge Ryan explained that she based her decision on, "all of the prior documentation, the charges, the allegations," and further clarified she was "not making a factual finding" because she "based [her] decision on the petition and the findings of another judge."

¶ 24    On this record, we agree with Shaw that Judge Ryan did not base her finding that continued detention was necessary due to Shaw posing a real and present threat on the specific articulable facts of the case, which constituted an abuse of discretion. See *Long*, 2023 IL App (5th) 230881, ¶¶ 18-19. The record shows Judge Ryan based this finding not on her own understanding of the specific articulable facts of the case, but on her acceptance of Judge Kelly's findings.

¶ 25    In so finding, we acknowledge that the pretrial detention hearing was only two days before Judge Ryan made her finding on October 17, 2023, and neither party contended that new information had arisen or a change in circumstances had occurred at that proceeding. Regardless of these circumstances, however, the Act requires that an independent finding based on the specific articulable facts of the case be made at every subsequent court appearance by a defendant. 725

8

ILCS 5/110-6.1(i-5) (West 2022). It follows that a circuit court at a subsequent appearance of a defendant cannot continue detention, without knowledge of the specific articulable facts, based only on acceptance of a previous judge's interpretation of the specific articulable facts, and a review of documentation that does not contain the specific articulable facts. *Id.*; see, e.g., *People v. Atterberry*, 2023 IL App (4th) 231028, ¶¶ 16-19 (The circuit court abused its discretion when it ordered pretrial detention not on an individualized consideration based on the specific articulable facts of the case, but on its judgment on the "wisdom" of the Act, and the court's "grievances about the unavailability of resources for people who are unfit to stand trial.").

¶ 26    We further acknowledge that our decision may well have been different had Judge Kelly presided over the October 17, 2023 proceeding, or if the record demonstrated that Judge Ryan independently reviewed the proffers made by the parties at that initial hearing (such as via review of a transcript). Here, however, the record contains no basis from which this court could conclude that Judge Ryan based her continued detention decision on the specific articulable facts. See *People v. Martin*, 2023 IL App (4th) 230826, ¶ 24 (finding the circuit court abused its discretion by not explaining its basis for finding no less restrictive conditions existed besides detention, and stating, "[w]hile the facts underlying the court's decision may well have been sufficient to deny pretrial release ***, we cannot supply the missing conclusion").

¶ 27    Next, we also agree with Shaw that Judge Ryan abused her discretion by finding that continued detention was necessary based on flight risk, a point the State does not dispute. Judge Kelly did not find detention necessary on this basis, and the State offered nothing new regarding flight risk at the October 17, 2023 proceeding. It appears Judge Ryan's decision on this point resulted from a simple misreading of the October 15, 2023 order. Accordingly, we vacate the

9

October 17, 2023 order finding continued detention was necessary in its entirety, and remand for the circuit court to resolve this issue consistent with the Act's requirements.

¶ 28 The State argues that Judge Ryan's finding regarding continued detention based on Shaw posing a real and present threat was appropriate because the Act does not require a full pretrial detention hearing at each subsequent court appearance by a defendant, and Judge Ryan acted consistently with the Act to base her finding on Judge Kelly's conclusions. The State cites *Long* for support. There, the Fifth District affirmed a finding of continued detention over defendant's claim that the State did not meet its burden at a subsequent appearance. *Long*, 2023 IL App (5th) 230881, ¶¶ 13-19. In affirming, the *Long* court explained that the circuit court complied with the statutory requirements for subsequent hearings after it permitted additional proffers from those made at the original detention hearing, and then "determined that continued detention was necessary to avoid the specific real and present threat" Long posed "based on the specific, articulable facts of this case." *Id.* ¶ 18.

¶ 29 We agree with the State that the Act, by its plain language, does not require a new, full pretrial detention hearing at each subsequent appearance of a defendant. Compare 725 ILCS 5/110-6.1(f) (West 2022), with 725 ILCS 5/110-6.1(i-5) (West 2022). This argument does not change our result because, as we have found, a new full hearing is not required at each subsequent appearance of a defendant, but a finding based on the specific articulable facts is, and Judge Ryan did not make such a finding on October 17, 2023. The State's citation to *Long* does not impact this conclusion. While *Long* featured a subsequent hearing that was seemingly less extensive than the initial pretrial detention hearing, the defendant there did not claim the circuit court failed to base its continued detention decision on the specific articulable facts of the case, giving the *Long* court no occasion to consider the issue before this court.

¶ 30    The State also argues the record suggests Judge Ryan based her decision on the specific articulable facts of the case because she reviewed Judge Kelly's written order from October 15, 2023, in which Judge Kelly wrote that Shaw was "identified as an individual who exited [the] victim's car shortly after [the] victim was carjacked at gunpoint" and "participated in armed vehicular hijacking where guns were pointed at adult victim and minor children." This argument fails because Judge Kelly's written summaries are not the specific articulable facts of the case, only his conclusions based thereon. See 725 ILCS 5/110-6.1(h)(1) (West 2022).

¶ 31    The dissent claims that we found Judge Ryan abused her discretion because she "did not hold a separate, independent detention hearing." This is a mischaracterization. As we state above, and reiterate in response to the dissent here, a full pretrial detention hearing is not required at each subsequent appearance. Instead, the Act requires a new determination that continued detention is necessary based on the specific articulable facts of the case. 725 ILCS 5/110-6.1(i-5) (West 2022). To satisfy this requirement, Judge Ryan needed to review the specific articulable facts of Shaw's case and exercise discretion based thereon. Judge Ryan expressly chose not to do so, and thus failed to exercise discretion when such an exercise was necessary, which constitutes an abuse of discretion. See *People v. Luellen*, 2019 IL App (1st) 172019, ¶ 38.

¶ 32    The dissent also argues, echoing the State, that Judge Ryan's finding was, in fact, based on the specific articulable facts because Judge Ryan reviewed certain documents, specifically the State's petition for detention and Judge Kelly's order of October 15, 2023. This argument fails because the record shows those documents provided only brief summaries of the specific articulable facts, not the specific articulable facts themselves. The dissent details the contents of those documents and concludes they are sufficient to constitute the specific articulable facts of the case as if those documents existed in a vacuum, but they do not. The Act requires the State to

11

proffer what it expects the specific articulable facts to be in detail at the detention hearing before any initial detention decision is made. 725 ILCS 5/110-6.1(f) (West 2022). That the State did so here is not at issue; nor is there any issue as to whether Judge Ryan's decision could be defensible substantively. The issue is that Judge Ryan ordered continued detention without independent consideration of those specific articulable facts as proffered at the hearing, and thus violated the procedural requirements of the Act. Again, as stated above, if the record showed Judge Ryan reviewed documents that contained detailed accounts of the specific articulable facts, our decision may well be different. That is not the record before us. We clarify that we do not find that the State must re-proffer the same evidence at any particular subsequent appearance and we agree with *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13, that the clear and convincing evidence burden the Act requires at the initial pretrial detention hearing does not apply at subsequent appearances. We make no sweeping declaration about what factual bases may or may not suffice in the future for continued detention decisions at subsequent appearances. We only find that the record shows Judge Ryan did not base the decision on the specific articulable facts of this case.

¶ 33    In sum, we vacate the circuit court's October 17, 2023 order continuing Shaw's detention, and remand for a new proceeding for the court to make a finding as to whether Shaw's detention should be continued based on the specific articulable facts of the case. In so finding, we retain jurisdiction, and order Shaw's continued detention pending the results of the new proceeding.

¶ 34    Finally, because reversal is necessary due to Judge Ryan not basing her continued detention decision on the specific articulable facts of the case, we do not reach Shaw's argument that the written order of October 17, 2023, did not comport with the statutory requirements.

¶ 35                                    CONCLUSION

¶ 36    Judge Ryan's finding of continued detention was not based on the specific articulable facts of Shaw's case, and as such, we remand to the circuit court for a new proceeding at which his continued detention must be considered in accordance with the Act's requirements. In so ordering, we retain jurisdiction, and further order that Shaw's detention will continue pending the result of the new proceeding.

¶ 37    Vacated and remanded with instructions.

¶ 38    JUSTICE TAILOR, dissenting:

¶ 39    The majority holds that Judge Ryan abused her discretion because she did not hold a separate, independent detention hearing when she ruled that Shaw would remain detained, and instead based her decision on the information presented to Judge Kelly, who only two days earlier ordered Shaw to be detained after a detention hearing. Although the majority says that it agrees section 5/110-6.1(i-5) "does not require a new, full pretrial detention hearing at each subsequent appearance of a defendant" (supra ¶ 29), it actually holds otherwise: "a circuit court at a subsequent appearance of a defendant cannot continue detention, without knowledge of the specific articulable facts, based only on acceptance of a previous judge's interpretation of specific articulable facts, and a review of documentation that does not contain the specific articulable facts." Given the specific facts of this case, the majority's holding essentially prohibits continued detention without a full hearing at a subsequent court date whenever the defendant appears before a different judge. Nothing in section 5/110-6.1(i-5) places such a burden on the court or State. In any event, the record shows that Judge Ryan considered the specific articulable facts of this case before ordering Shaw's continued detention. Therefore, I respectfully disagree with the majority's conclusion that Judge Ryan abused her discretion.

13

¶ 40    The plain language of section 5/110-6.1(i-5) does not require a new comprehensive pretrial detention hearing every time a defendant appears before a different judge, especially where, as here, a fulsome review of the specific articulable facts of the case had taken place only two days earlier. See *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13 (at a subsequent hearing under subsection (i-5) the State is not required to prove that (1) the proof is evident or presumption great that defendant committed a detainable offense, (2) defendant poses a real and present threat to any person, persons, or the community or is a flight risk, and (3) no conditions could mitigate this threat or risk of flight, which are propositions required to be proven at the initial detention hearing). Section 5/110-6.1(i-5) merely requires that the court find that a defendant's "continued detention" is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, which Judge Ryan did in this case.

¶ 41    Here, the State filed a felony complaint and then a verified petition for pretrial detention. The facts of the case were proffered by the State and Shaw's eligibility for detention was addressed on the record on October 15, 2023, at his initial appearance hearing at the Leighton courthouse. Judge Kelly determined that Shaw should be detained. Shaw does not appeal from the court's October 15th detention order.

¶ 42    Two days later, on October 17th, Shaw appeared at the Maywood courthouse for a preliminary hearing. Shaw answered ready for a preliminary hearing. The State requested a continuance. Judge Ryan continued the case to November 8, 2023. Defense counsel then reminded the court that, "you also do have to make a finding that his continued detention is necessary." Judge Ryan then did exactly what subsection (i-5) required of her and found "that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's

14

willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2022). To be clear, neither the State nor Shaw filed a petition to modify conditions of pretrial release under section 5/110-6 (725 ILCS 5/110-6 (West 2022)) prior to or on the October 17th court date. Nor did Shaw file a motion to reconsider the Court's October 15, 2013, detention order. With respect to Shaw's continued detention, the State's position on October 17, 2023, was that nothing had changed since the October 15th detention hearing, and that Shaw continued to pose a real threat to the victim and the community and that no condition or conditions could mitigate that threat. Shaw presented no evidence of a change in circumstances requiring modification in the two-day period between the original detention hearing before Judge Kelly on October 15, 2023, and Shaw appearing before Judge Ryan on October 17, 2023.

¶ 43    We do not know from the record whether Judge Ryan had a transcript of the October 15, 2023, hearing. However, based on Judge Ryan's statements on October 17, 2023, it is apparent that she reviewed the State's felony complaint, verified petition for detention, and the order entered on October 15, 2023, each of which set forth the essential facts proffered by the State on October 15, 2023. The sworn felony complaint alleged that Shaw committed the offense of aggravated vehicular hijacking in that he "knowingly [took] a motor vehicle from the person and [Shaw] [was] otherwise armed with a firearm. To wit: [Shaw] pointed a firearm at the victim and her children and forced them out of their vehicle and took possession of the victim's vehicle." The sworn "petition for pretrial detention hearing" alleged that Shaw committed a forcible felony and that he posed a real and present threat to the safety of any person or persons in that "Shaw and co-defendants pointed a gun at victim and her children forcing them from their blue Jeep Compass. The offender then took possession of the Jeep Compass and fled scene eventually being taken into custody after a pursuit." The written order filed after the pretrial detention hearing indicates that

Judge Kelly ordered Shaw detained after making a finding that the State proved by clear and convincing evidence that: (1) Shaw committed an eligible offense, aggravated vehicular hijacking, where he was "identified as an individual who exited victim's car shortly after victim was carjacked at gunpoint. Defendant is identified by P.O. as occupant of victim's car; (2) Shaw poses a real and present threat to the safety of an person or persons or the community based on the specific articulable facts of the case which were that "[Shaw] participated in armed vehicular hijacking where guns were pointed at adult victim and minor children; and (3) no condition or combinations of conditions could mitigate the real and present threat because "based on the violent nature of this alleged offense and defendant's pending case in the state of Iowa, and the use of guns with extended magazines during the commission of this crime." In addition, Judge Ryan reviewed Shaw's scores for new criminal activity and failure to appear criteria that were presented at the October 15, 2023, detention hearing. Judge Ryan stated, "The defendant was charged with a forcible felony, and it was found that he does pose a real and present threat to the safety of that person or persons in the community based on the charge of vehicular hijacking." Judge Ryan also stated that "it was alleged that the defendant and co-defendants pointed a gun at a victim and children forcing them out of a car." Judge Ryan noted Shaw "received scores of 4 and 2" for new criminal activity and failure to appear, respectively, and that the recommendation was maximum conditions if released. Shaw does not dispute any of these findings on appeal. Judge Ryan found that "based on all of the prior documentation, the charges, the allegations" presented at the October 15, 2023, hearing, "I will continue to find the detention is necessary," stating that she agreed "with the other judge that [Shaw] had poises (sic) a threat," based on that fact that Shaw was charged with a "forcible felony and the allegations were written here and that it was alleged that he pointed a gun at a victim."

¶ 44    As *Casey* instructs, subsection (i-5) does not place the burden on the State to prove that a defendant is eligible for pretrial detention by clear and convincing evidence. *Casey*, 2024 IL App (3d) 230568, ¶ 13. "Although this determination necessarily entails consideration of the threat or flight risk posed by a defendant and the potential mitigation of such threat or flight risk by conditions of release, the Code does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required at the initial hearing." *Casey*, 2024 IL App (3d) 230568, ¶ 13. Subsection (i-5) merely places the onus on the court to *make a finding* that continued detention is necessary based on the "specific articulable facts of the case." There is no requirement that the court hear those "specific articulable facts" firsthand. Similarly, there is nothing in section (i-5) that prohibits a court from reviewing previously established "specific articulable facts." Therefore, it was entirely proper for Judge Ryan to review the information presented to Judge Kelly at the October 15, 2023, hearing to determine whether Shaw's detention would continue where no new information was presented. It is clear from the record that Judge Ryan sufficiently familiarized herself with the "articulable facts" of the case and made a well-reasoned ruling to continue Shaw's detention. She was aware of the pertinent facts presented at the October 15, 2023, detention hearing and agreed with Judge Kelly's decision to detain Shaw on that date. The majority's assertion that Judge Ryan simply parroted Judge Kelly's conclusions is not borne out by the record. Moreover, the majority fails to explain the difference between listening to the State's proffer, as Judge Kelly did, and reading the State's verified detention petition and Judge Kelly's order, as Judge Ryan did, where the proffer, petition and order align in all essential respects. Requiring the State to repeat the proffer would be redundant and elevate form over substance. Judge Ryan did not abuse her discretion.

¶ 45    For the foregoing reasons, I respectfully dissent.