2025 IL App (1st) 251777-U

FIRST DIVISION
December 15, 2025

No. 1-25-1777B

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 25 CR 7151 |
| | ) | |
| THOMAS G. PHELPS, | ) | Honorable |
| | ) | Thomas J. Byrne, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the order of the circuit court of Cook County denying defendant's motion for relief from pretrial detention; the evidence established by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offense of first degree murder, that defendant poses a real and present threat to the safety of the community, and that no combination of conditions exist that can mitigate the threat defendant poses; defendant's claim the killing occurred in self-defense is a matter for trial that does not diminish the strength of the evidence to detain defendant.

¶ 2    The State filed a petition for pretrial detention alleging that defendant, Thomas G. Phelps, committed the offense of first degree murder. The circuit court of Cook County granted the State's petition and ordered defendant detained pretrial. Defendant filed a motion to vacate the detention order and to release defendant from pretrial detention. The trial court denied defendant's motion. Defendant filed a motion for relief pursuant to Illinois Supreme Court Rule

1-25-1777B

604(h) (eff. Apr. 15, 2024). The trial court denied the motion for relief. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4        On May 30, 2025 the State filed a petition for a pretrial detention hearing pursuant to section 110-6.1(a) of the Code of Criminal Procedure (Code) (725 ILCS 5/110-6.1(a) (West 2024)) against defendant, Thomas G. Phelps. The petition alleged that the proof is evident or the presumption is great that defendant committed the eligible offense of first degree murder; that defendant poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case; and that no condition or combination of conditions section forth in section 110-10(b) of the Code can mitigate that risk.

¶ 5        The State attached a written proffer as an addendum to its petition that stated, in pertinent part, that on May 27, 2025, defendant and a friend arrived at a bar. "The bar has several exterior surveillance cameras equipped with audio that captured much of the events." When defendant observed the security checkpoint at the entrance to the bar where patrons were being patted down, defendant "abruptly turned around and walked back toward the [vehicle] where [defendant] appeared to place something back inside it before rejoining the line." At approximately 1:15 a.m., defendant and his friend exited the bar at closing time then "loitered in the parking lot for some time" where they engaged in conversation with a security guard from the bar and other patrons exiting the bar. The proffer alleged that the murder victim arrived at approximately 1:30 a.m. and, after approaching the bar to ask if it was still open, began a conversation with defendant and defendant's friend as they walked back toward the vehicle defendant arrived in. The proffer stated:

"As the Defendant and friend approached the [vehicle,] the Defendant opened the driver's door and the friend opened the passenger door. The Victim then quickly approached the [vehicle] and appeared to lunge at the Defendant, at which point the Defendant began firing multiple rounds—three in quick succession followed by a fourth after a brief pause."

The proffer stated that defendant fled and that the victim was unarmed.

¶ 6    The proffer also stated that defendant was found guilty of Aggravated Unlawful Use of a Weapon in 2024, for which defendant was sentenced to 18 months' imprisonment, and Aggravated Battery with a Firearm in 2010, for which defendant was sentenced to 10 years' imprisonment.

¶ 7    On May 30, 2025, at the hearing on the State's petition for pretrial detention, the State made an oral proffer consistent with its addendum. As to whether defendant poses a real and present threat to any person or member of the community, the State argued that this "is obviously a violent crime. But it's clear from his background that [defendant] is a violent individual." The State argued that it is reasonable to infer from defendant's conduct upon seeing the security checkpoint that defendant was armed that evening. As to conditions that can mitigate the risk of harm defendant poses, the State proffered defendant's background in that defendant was convicted of shooting someone, was released from prison, then "picked up a gun case;" and, finally, "being a convicted felon, *** [defendant] is again armed and shot and killed somebody." The State argued that the trial court should place no confidence in defendant being able to comply with any conditions of release "because [defendant] is an individual who has shown he does not follow the law."

¶ 8    The defense argued that the State failed to meet its burden to show by clear and convincing evidence that the proof is evident or the presumption is great that defendant killed the victim "without lawful justification" because there is evidence of self-defense in that the victim "went at" defendant and appeared to lunge at him. The defense argued that the fact the shooting only happened after "a provocation" could be considered in determining whether defendant poses any threat to any person or the community. Regarding conditions of pretrial release, the defense argued that anyone could commit another offense while on electronic monitoring, so "to just say that based on the charge here without any sort of—without any short [*sic*] of further look at the particular specifics of [defendant's] case doesn't really apply."

¶ 9    The trial court acknowledged that according to the State's proffer, "at some point, I guess, something got heated" between defendant and the victim "and the victim somehow lunged at [defendant;] at which point it is said that [defendant] began firing multiple rounds." The court found that the current charge represents "an up-tick in criminality" for defendant. The court found that if the State's proffer is true, defendant had a gun that night but as a felon defendant is "not supposed to have a gun." The court noted that the victim was not armed, so the force defendant used was "way out of proportion than what was used" against defendant. The court found that although defendant's attorney argued this could be a case of self-defense, because defendant was a convicted felon, he was not supposed to be in possession of a gun. The court concluded that defendant was a threat "to the remaining witnesses who would possibly testify" and to the community "because this type of behavior, this up-tick in criminality is quite disturbing." The court found that electronic monitoring "is for individuals who have shown that they can follow rules. *** It's for people who demonstrate non-violence and an ability to adhere to strict conditions." The court found that "based upon the fact that [defendant had an AUUW in

his] background after being convicted of a felony tells me that you can't follow strict conditions." The court granted the State's petition.

¶ 10     On July 28, 2025 defendant filed a Motion To Vacate Detention Order And Release Defendant From Pretrial Detention pursuant to section 110-6.1(i-5) of the Code (725 ILCS 5/110-6.1(i-5) (West 2024)). Section 110-6.1(i-5) provides that:

> "At each subsequent appearance of the defendant before the court, the judge must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2024).

¶ 11     The defense argued that defendant does not pose a real and present threat to the safety of any person or the community, nor does he pose a flight risk, because there is no direct evidence linking defendant to the gun used in this case where the gun was retrieved from defendant's friend's vehicle and the vehicle was registered in the friend's name. Therefore, there is no direct evidence to support the trial court's reason for finding defendant to be a danger to a person or the community: that being that defendant was a felon unlawfully in possession of a gun. Defendant's motion noted his score of "two" on the pretrial assessment failure to appear scale and that his "PSA coincides with pretrial level 3." The defense also argued that the State did not proffer "beyond the facts of the case [or] acknowledge any conditions to mitigate potential flight." On the contrary, the State "failed to provide any evidence that [defendant] either resisted arrest, attempted to evade prosecution, or had any history of missing court hearings."

¶ 12     On July 30, 2025 the trial court held a hearing on defendant's motion. The defense tendered newly discovered evidence in the form of additional surveillance video of the shooting

that was not presented at the initial detention hearing. The defense argued that the victim can be seen pacing back and forth, "scoping the place out," and that the victim was with individuals in another vehicle. The victim walked toward that second vehicle then lunged at defendant. The defense argued that someone got out of the vehicle that was with the victim and shot at defendant. The defense informed the trial court that the shot from the vehicle that was with the victim was not shown on the video then in the possession of the defense, but that there was more video the defense was trying to obtain. The defense also argued that the scene was unsecure and multiple people had access to the victim before police arrived and it is possible someone removed a gun from the victim. The defense argued that this is "not a first-degree murder case" because defendant was "shooting in defense of himself." The defense argued that defendant fled the scene "out of fear and as soon as he runs, a shot is fired at him."

¶ 13    The State argued that defendant's background, having been previously convicted of two firearms offenses then shortly after being released from parole arming himself and committing this offense, made defendant a real and present threat and that no conditions can mitigate that threat because defendant has "armed himself multiple times, despite being a convicted felon" showing that defendant "cannot follow the rules."

¶ 14    The trial court denied defendant's motion.

¶ 15    On August 20, 2025 defendant filed his Motion For Relief Pursuant To Illinois Supreme Court Rule 604(h) (Rule 604 motion). Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024) provides that:

> "As a prerequisite to appeal, the party taking the appeal shall first present
> to the trial court a written motion requesting the same relief to be sought on
> appeal and the grounds for such relief. The trial court shall promptly hear and

decide the motion for relief. Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived." Ill. S. Ct. R. 604(h)(2).

¶ 16   Defendant's Rule 604 motion argued that a change in circumstances warranted a redetermination of defendant's detention status. The Rule 604 motion argued that change was defense counsel's obtaining additional security footage depicting the shooting which was previously unavailable at the (two) prior detention hearings. The Rule 604 motion asserted that the new video "further cements counsel's argument that [defendant] was not the initial aggressor." Defendant's motion describes the videos, which are not part of the record on appeal, as follows:

> "In this newly discovered security footage, an additional shot can be seen coming from a separate vehicle in the direction of [defendant.] Exhibit 1 at 0:50. This video depicts a muzzle flash showing that the shots being fired toward the victim did not come from [defendant's] vehicle. There is also video footage depicting the victim exiting from the vehicle that fired a gun toward [defendant.] Exhibit 3 at 0:10. In the video shown during the July 30, 2025, detention hearing, the victim can be seen walking around and up to the car that fired gunshots at [defendant] right before the victim approached and lunged at [defendant.] Exhibit 2 at 1:30."

¶ 17   The Rule 604 motion argued that from the two videos, "it is clear that there was a relationship between the victim and the individuals who shot at [defendant] and that they were acting in concert with one another to target [defendant."] The defense argued that the trial court had solely relied on allegations that defendant was the initial aggressor to determine defendant's

custody status; therefore, the court should reconsider its ruling and order less restrictive means for defendant's release. Furthermore, the Rule 604 motion argued that the State cannot prove by clear and convincing evidence that the proof is evident or the presumption great that defendant committed first degree murder, in that defendant shot the victim without lawful justification or with the specific intent to kill, where defendant was not the initial aggressor.

¶ 18    Additionally, defendant's Rule 604 motion argued that the State cannot prove by clear and convincing evidence that defendant poses a real and present threat to any person or the community. The motion argued that "no evidence has been presented" that defendant "did in fact commit these acts, let alone that he poses a real and present threat to the safety of the community." The Rule 604 motion also argued that at both prior detention hearings the State "failed to provide any additional allegations relating to any potential danger to the community that [defendant] may pose beyond those relating to the charges he is currently facing and his background."

¶ 19    On August 25, 2025 the trial court held a hearing on defendant's Rule 604 motion. The defense argued consistently with the arguments in the motion. The defense argued that the victim was "acting as an accomplice with the other individual who shot at [defendant] who was waiting to be the getaway driver in case [the victim] either robbed [defendant] or killed [defendant,] who *** wasn't committing a crime." The defense played the videos for the trial court. The court questioned whether a "flash" on the video was a muzzle flash or an interior light from a vehicle. The defense noted, consistently with the Rule 604 motion, that the defense had obtained statements from security guards at the restaurant/bar where the shooting took place that said that defendant was not armed when he entered the bar, left, and returned, and that defendant frequented the bar and never caused any trouble.

¶ 20 The State clarified for the record that the defense showed the trial court two new videos of the incident but otherwise the State stood on the arguments it made on the last court date. (The State did not refute the defense's narration of what the videos depicted.)

¶ 21 The trial court found that whether defendant was justified in the force he used "has yet to be determined based on the trial." The court found that the State had shown by clear and convincing evidence that the proof is evident and the presumption is great that defendant "committed more than one eligible offense[,] not only the first-degree murder but also the weapons offenses." The court found that if, at trial, defendant is found to have been justified in the use of force, then defendant would "be justified in arming himself to preserve his life or that of somebody else." The court found that,

"defendant does pose a real and present danger to the community based on these facts as well as the aggravation that I heard regarding his background, his weapons convictions, his prior felony convictions and that based on this case, his prior choices are to arm himself as a felon [and] there are no conditions or combination of conditions that can mitigate the threat that [defendant] does pose to the community short of detention."

The court denied defendant's Rule 604 motion.

¶ 22 This appeal followed.

¶ 23                                ANALYSIS

¶ 24 This is an appeal from the denial of a motion for relief from pretrial detention pursuant to section 110-6.1(i-5) of the Code of Criminal Procedure (725 ILCS 5/110-6.1(i-5) (West 2024)) and Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). "Although our supreme court has not specifically addressed the standard of review for continued detention hearings under section

110-6.1(i-5), *Morgan* suggests that the standard of review for any pretrial detention ruling under section 110-6.1 is *de novo* when the parties have proceeded by proffer and did not present live witness testimony." *People v. Wilson*, 2025 IL App (1st) 242454-U, ¶ 21 (citing *People v. Morgan*, 2025 IL 130626, ¶¶ 17, 54). No witnesses testified at any of the detention hearings in this case. "[W]hen the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *Morgan*, 2025 IL 130626, ¶ 54.

¶ 25    "[A] court ordering continued pretrial detention must make certain findings based on specific, articulable facts, just as at an initial detention hearing. [Citation.] However, [these] subsequent determinations are not subject to every statutory requirement that applies to initial detention hearings." *People v. Harris*, 2024 IL App (2d) 240070, ¶ 37. "[S]ection 110-6.1(i-5) merely requires the trial court to find that ' "continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." ' [Citations.]" *Id.* ¶ 41.

¶ 26    The trial court reviewed new documentary evidence at the hearing on defendant's section 110-6.1(i-5) motion that was not available at the initial detention hearing and additional new evidence at the hearing on defendant's Rule 604 motion. This court has recognized that "the trial court may hear new evidence when considering whether continued detention is necessary under section 110-6.1(i-5) of the Code." *People v. Davis*, 2025 IL App (1st) 242306-U, ¶ 43 (citing *Harris*, 2024 IL App (2d) 240070, ¶ 51). The *Davis* court also recognized, however, that "the plain language of Rule 604(h) does not provide for the presentation of new evidence, and that

'[a] second full-scale pretrial detention hearing upon a motion for relief, with new evidence and proffers, would only complicate the appeals process and add confusion regarding the issues before this court on appeal.' [Citation.]" *Id.* Thus, "a proper hearing under Rule 604(h) consists only of an examination of the State's evidence at the initial detention hearing [and continued detention hearing] and a determination of whether the State had met its burden of proof." See *Davis*, 2025 IL App (1st) 242306-U, ¶ 43.

¶ 27    In this case, following the hearing on defendant's Rule 604 motion, not only did the trial court find, superfluously, that "the State has shown by clear and convincing evidence that the proof is evident and the presumption is great that the defendant committed more than one eligible offense[,] not only the first-degree murder but also the weapons offenses;" the court also unnecessarily considered defendant's evidence that had not been presented at the hearing on defendant's section 110-6.1(i-5) motion. See *Wilson*, 2025 IL App (1st) 242454-U, ¶ 23. In *Wilson*, this court found that,

> "We must note that the trial court did not follow proper procedures in addressing [the] defendant's 'motion for pretrial release.' Instead of applying section 110-6.1(i-5) to determine whether continued detention was necessary to avoid a safety threat or prevent willful flight, the court made findings regarding the three elements required for an *initial* detention hearing. Given that [the] defendant's motion asked the court to terminate his *continued* detention, the court did not need to conduct such an analysis. The Act does not provide for repeated initial detention hearings." *Id.* (citing *People v. Stokes*, 2024 IL App (1st) 232022-U, ¶ 36).

Nonetheless, "there are a growing number of cases indicating that, even when the circuit court conducts a hearing and makes findings for continued detention using the three statutory factors usually required for an initial detention hearing, such findings are not generally or necessarily fatal to our review." *People v. Washington*, 2024 IL App (1st) 240894-U, ¶ 53.

¶ 28    "[A]lthough there are fewer findings for the court to make in a continued detention hearing, the court must still expressly adhere to the statute in finding that continued detention is necessary." *Washington*, 2024 IL App (1st) 240894-U, ¶ 54. The trial court must find "a defendant's real and present threat based on the specific and articulable facts of the case." *Id.* ¶¶ 54-55 (citing *People v. Shaw*, 2024 IL App (1st) 232021-U, ¶¶ 25-26). This court has found that,

> "[i]n determining whether a given defendant continues to pose a real and present
> threat to the safety of the community, the Procedure Code allows courts to
> consider, among others, the nature and circumstances of the charged crimes;
> defendant's history and characteristics, including prior criminal and psychological
> background; defendant's access to any weapons; and any other factors speaking to
> defendant's propensity or reputation for violent or assaultive behavior."
> *Washington*, 2024 IL App (1st) 240894-U, ¶ 56.

¶ 29    In this appeal, defendant argues that the trial court's order detaining him should be reversed because the State failed to satisfy any of its burdens under the Pretrial Fairness Act (Act).

> "[T]he State bears the burden of proving by clear and convincing
> evidence: (1) the defendant committed an offense listed in the statute; (2) the
> defendant poses a real and present threat to the safety of any person, persons, or
> the community, based on the specific, articulable facts of the case; and (3) no

condition or combination of conditions can mitigate that real and present threat or the defendant's willful flight. [Citation.] Clear and convincing evidence is 'that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question.' [Citation.]" *People v. Williams*, 2024 IL App (1st) 240341-U, ¶ 13.

We will address each of defendant's contentions on appeal in turn. See *Davis*, 2025 IL App (1st) 242306-U, ¶ 43 ("Although the hearing on defendant's motion for relief was an improper full detention hearing, this error was harmless because our determination remains the same even if we consider the testimony presented at the second hearing.").

¶ 30     First, defendant argues that the State failed to prove by clear and convincing evidence that the proof is evident or the presumption is great that defendant committed first degree murder. Defendant argues he did not have the intent to kill without lawful justification. "[A] defendant who believes he is acting in self-defense intends to kill with lawful justification and, therefore, does not have the intent to commit the offense of first degree murder." *People v. Guy*, 2025 IL 129967, ¶ 47. Defendant argues that the "facts are dispositive" that defendant "was targeted," and there were reasonable grounds for defendant to suspect that his life was in danger and that "self-protective measures would be warranted." Defendant argues that his protecting himself from attack "fails to establish that [defendant] knowingly killed another without lawful justification;" therefore, the State failed to meet its burden and the order for pretrial detention should be reversed.

¶ 31     In response to defendant's self-defense argument, the State argues that "at this stage in the proceedings[, the State] need not disprove an affirmative defense," only needing to do so if the affirmative defense is raised at trial. The State argues that "the fact defendant may have a

defense to the charge does not negate the circuit court's findings at this stage." Alternatively, the State argues that, based on defendant's account, defendant was not justified in killing the victim because "the force [defendant] used was disproportionate to the supposed threat of the unarmed victim lunging at defendant." The State relies primarily on *People v. Smith*, 2024 IL App (2d) 240168, in which the court wrote as follows:

> "In Illinois, the question of whether a defendant's use of force was *ultimately* justified is a matter resolved at *trial*, for 'it is the responsibility of the trier of fact to fairly *** resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' [Citations.] A claim of justification is, of course, relevant at a pretrial release hearing, but merely because a defendant *might* raise a defense at trial is *not* dispositive of pretrial release concerns." *Smith*, 2024 IL App (2d) 240168, ¶ 21.

¶ 32     We note that *Smith* applied the manifest weight of the evidence standard to the trial court's determination that there was sufficient evidence that the defendant had committed a detainable offense. *Id.* See *People v. Reed*, 2024 IL App (1st) 231834, ¶ 25 (trial court's finding the defendant committed the offense and poses a danger to the community was not against the manifest weight of the evidence where a proffered defense to the charge was "far from clear"). Nonetheless, the *Smith* court found that, "at best, [the] defendant has a 'nascent' *** or aspirational claim of self-defense or defense of others. But to treat those defenses as pled and proven, as [the] defendant does, especially at this early juncture, has no basis in the law of criminal procedure or in the facts of this case." *Smith*, 2024 IL App (2d) 240168, ¶ 31.

¶ 33     In *People v. Martin*, 2024 IL App (2d) 240406-U, ¶¶ 15, 17, the court also rejected a defendant's argument that the State failed to show by clear and convincing evidence that the

proof was evident or the presumption great that the defendant committed the charged offenses where the State failed to prove that the defendant had not acted in self-defense. There, the court found:

> "Regarding the sufficiency of the evidence that the proof was evident or presumption great that defendant committed the charged offenses, we begin by rejecting [the] defendant's arguments regarding self-defense. Self-defense is an affirmative defense, which must be raised sufficiently by the defendant, only after which point the State has the burden of proving that the defendant did not act in self-defense. [Citation.] At no point did defendant raise self-defense, instead arguing before the trial court that the State had not shown defendant did not act in self-defense. The State was therefore not obligated to provide evidence for a lack of self-defense at this point in the proceedings. [Citation.]" *Martin*, 2024 IL App (2d) 240406-U, ¶ 17 (citing *Smith*, 2024 IL App (2d) 240168, ¶ 21).

¶ 34 We agree with the reasoning in *Smith* and *Martin*. There is nothing in the statute to suggest that the State must disprove a potential defense to sustain its burden to demonstrate by clear and convincing evidence that the proof is evident or the presumption great that defendant committed a detainable offense. 725 ILCS 5/110-6.1 (West 2024). The State is only required to present reliable evidence to sustain its burden. *People v. Williams*, 2024 IL App (1st) 241181-BU, ¶ 49) (citing *People v. Whitaker*, 2024 IL App (1st) 232009, ¶ 57 (citing 725 ILCS 5/110-6.1(f)(2) (West 2024))). Where the State has presented reliable evidence that the defendant committed the charged offense, we have recognized that, "[a]lthough more evidence may be necessary to prove his guilt beyond a reasonable doubt, the evidence presented thus far is

sufficient to show that the proof is evident or the presumption great that [the] defendant" committed the offense. *People v. Dominguez*, 2025 IL App (2d) 240772-U, ¶ 29.

¶ 35    We find, based on our *de novo* review of all of the evidence, including defendant's proffer of the additional surveillance videos, that the State satisfied its burden. There is no dispute that all of the video surveillance clearly shows that defendant shot the victim. Moreover, despite defendant's inferences drawn from the additional videos, the evidence is clear and convincing that the victim was unarmed and/or did not threaten defendant with a weapon. The proof is evident or the presumption is great that defendant committed first degree murder.

¶ 36    Defendant also argues that the State failed to prove by clear and convincing evidence that defendant poses a real and present threat to the safety of any persons or the community. Defendant argues that the trial court stated that it was relying on the facts of the case and defendant's criminal history, but that "the trial court did not offer particularized findings justifying the reasons [defendant] poses a real and present danger as to the specific articulable facts of this case." Defendant also argues that he is not charged with unlawful use or possession of a weapon, yet the trial court heavily emphasized the fact defendant is a felon who should not be in possession of a weapon. Defendant argues this fact improperly persuaded the trial court to keep defendant detained and at the same time, the trial court did not "expand on" defendant's alleged right to use a concealable firearm in self-defense in its orders to detain defendant.

¶ 37    The State responds that the proffered facts

"show that defendant poses a real and present threat to the community" and that, "[a]lthough defendant claims he acted in self-defense, there is sufficient evidence rebutting that contention. If defendant was not acting in self-defense, which is an

issue for trial, the facts show that defendant possessed a gun and killed the victim in the parking lot of a closing bar."

¶ 38 First, we find that the trial court articulated findings based on the specific facts of this case stating the court's reasons for finding that defendant poses a real and present danger to the community and why less restrictive conditions would not mitigate that danger. At the conclusion of the July 30, 2025 hearing on defendant's section 110-6.1(i-5) motion, the trial court found that the State proffered evidence that the victim was unarmed, defendant's new evidence did not show anyone removing a weapon from the victim, and that defendant fired a gun at the victim. The trial court noted the fact defendant had put something away in the vehicle before going through the checkpoint, then defendant was at the vehicle when he shot the victim, firing four times. The court did consider defendant's argument that he acted in self-defense but found it to be an issue for trial. The court found as follows:

"It is the Court's finding, based on all the matters brought to the Court's attention, that continued detention of the defendant is necessary to protect the public from the danger that the defendant finds this—I'm sorry, the Court finds this defendant poses to the community. That there are no conditions short of detention that would adequately protect the public from this charged defendant."

¶ 39 Then, after the hearing on defendant's Rule 604 motion, the trial court relied on the facts of the offense, defendant's weapons convictions, and defendant's "prior choices *** to arm himself as a felon" to conclude that defendant "does pose a real and present danger to the community" and that "there are no conditions or combination of conditions that can mitigate that threat *** short of detention." Based on the foregoing, we find that the trial court fulfilled its statutory obligation to provide a "basis from which this court could conclude that [the trial court]

- 17 -

based [the] continued detention decision on the specific articulable facts" of this case. *Shaw*, 2024 IL App (1st) 232021-U, ¶ 26.

¶ 40 Second, based on our *de novo* review of the evidence, we find that the nature and circumstances of the charged crime, defendant's prior criminal history, and that defendant has been known to possess or maintain access to weapons, all support finding that defendant poses a threat to the safety of the community. *Williams*, 2024 IL App (1st) 240341-U, ¶ 22 ("In determining whether a defendant poses a real and present threat to safety, the circuit court may consider a non-exhaustive list of factors, including the nature and circumstances of the charge; the defendant's prior criminal history; the age and physical condition of the defendant; and whether the defendant is known to possess or have access to weapons. 725 ILCS 5/110-6.1(g) (West 2022)."). Defendant complains that the State and the trial court emphasized the fact that defendant is a convicted felon who should not be in possession of firearms even though defendant is not being charged with aggravated unlawful use or possession of a weapon in this case. However, after having been convicted of a gun offense, defendant chose to arm himself or provide himself with easy access to a gun at least twice more, the second time resulting in a death. Regardless whether defendant is separately charged with a gun offense, his status as a felon who chooses to continue to use or have access to guns is another factor speaking to defendant's refusal to comply with the law and propensity for violent or assaultive behavior. See *Washington*, 2024 IL App (1st) 240894-U, ¶ 56. We find that there is clear and convincing evidence of defendant's danger to the community. 725 ILCS 5/110-6.1(g)(2)(A), (g)(7), (g)(9) (West 2024) (listing factors in determining dangerousness).

¶ 41 We also find that the State satisfied its burden to prove by clear and convincing evidence that defendant poses a threat to the safety of the community because, while defendant has

presented some evidence of self-defense, defendant's proffer does not conclusively establish that defendant acted in self-defense. As the trial court found, the proffered evidence, including defendant's evidence, shows only that the victim was unarmed. We find the opinion in *People v. Romine*, 2024 IL App (4th) 240321, instructive. In *Romine*, the State charged the defendant with first degree murder. *Romine*, 2024 IL App (4th) 240321, ¶ 8. The defendant filed for reconsideration of his pretrial detention pursuant to sections 110-6.1(a)(1.5) and 110-6.1(a)(8) of the Act. (725 ILCS 5/110-6.1(a)(1.5), (8) (West 2022)). *Id.* ¶ 9. On appeal from the denial of the defendant's motion, the defendant argued that he was asserting self-defense, a deadly weapon was recovered which supported that defense, and, consequently, the State could not prove by clear and convincing evidence that the proof was evident or the presumption great that the defendant committed the offense of first degree murder. *Id.* ¶ 13. The *Romine* court focused on the "claim of self-defense as it pertains to the elements of dangerousness and conditions of release." *Id.* ¶ 14.

¶ 42    The *Romine* court found that "[t]he court was not required to accept [the] defendant's contention that he acted in self-defense when the record permitted other conclusions concerning his culpability and, by extension, his potential dangerousness." *Romine*, 2024 IL App (4th) 240321, ¶ 21. The record included evidence that the defendant fled the scene of the shooting and, when contacted by police, the defendant lied about the victim and later evaded police. *Id.* ¶ 7. In this case, we are not required to accept defendant's contention that he acted in self-defense because here, as in *Romine*, the record permits other conclusions concerning defendant's culpability "and, by extension, his potential dangerousness."

¶ 43    Here, despite defendant's arguments and some circumstantial evidence to permit an inference to the contrary, the record provides clear and convincing evidence that the victim was

unarmed and that defendant had no grounds to reasonably believe that the victim threatened defendant with death, great bodily harm, or a forcible felony. 720 ILCS 5/7-1(a) (West 2024) ("A person is *** justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony."). The victim's conduct was consistently, by both parties, described as a "lunge" toward defendant, not that the victim threatened defendant with a deadly weapon. (We note the proffer that the surveillance cameras could also record audio.) The trial court found that defendant's proffered evidence that the second vehicle fired at defendant was inconclusive, questioning whether the video showed a muzzle flash or a light from a vehicle. Also, defendant did not remain on the scene, or return after any alleged threat had subsided, or call to tell police he had to shoot a man in self-defense. Rather, police had to track down defendant to arrest him. Similarly to *Romine*, "[d]efendant's actions are not consistent with an innocent mistake or genuine remorse but a concerted refusal to accept responsibility for conduct he knew was wrong." *Romine*, 2024 IL App (4th) 240321, ¶ 23. We find that the State proved defendant's threat to the safety of the community by clear and convincing evidence.

¶ 44    We also find that the State proved by clear and convincing evidence that no combination of conditions could mitigate the threat defendant poses to the community. Defendant argues that the State merely relied on the facts of the case and defendant's criminal background but failed to acknowledge any conditions listed in section 110-10(b) of the Code or conditions to mitigate potential flight. Defendant argues that electronic monitoring would be a sufficient condition of release to mitigate the risk of engaging in future criminal activity or of flight. The State responds defendant committed a serious crime by shooting someone in a populated area, defendant has a

history of "not complying with rules and the law," and has multiple felony convictions; all of which "suggest that defendant will not comply with conditions ***."

¶ 45     First, we reject defendant's argument that the State's proof is based on no more than the allegations that make up the offense and defendant's criminal background. Defendant relies on *People v. Stock*, 2023 IL App (1st) 231753, ¶ 19, where the court held that "the State relied simply on its factual proffer about the allegations, which did nothing to establish that no combination of conditions could mitigate the threat." We also reject defendant's argument that the State failed to acknowledge any potential mitigating factors listed in section 110-10(b). At the hearing on defendant's section 110-6.1(i-5) motion, the State argued that no conditions short of detention could mitigate the threat defendant poses based on defendant's criminal history, *and* specifically because

> "he's armed himself multiple times, despite being a convicted felon. That he was
> discharged from parole only three months prior to being arrested for this murder
> and that [electronic monitoring] even cannot mitigate the risk and that the
> defendant has shown that he cannot follow the rules."

On appeal, the State argues that defendant has demonstrated his ability to obtain firearms and that defendant "could do so with the movement allowed by electronic monitoring."

¶ 46     We find that the State proffered evidence based on the specific articulable facts of this case as to why electronic monitoring (725 ILCS 5/110-10(b)(5) (West 2024)) would be insufficient to mitigate the threat defendant poses to the community. Therefore, we find that defendant's reliance is misplaced and *Stock*, 2023 IL App (1st) 231753, ¶ 17, is inapposite.

¶ 47     Second, we find, based on our *de novo* review, that no combination of conditions could mitigate the threat defendant poses to the community.

"(a) In determining which conditions of pretrial release, if any, will reasonably ensure *** the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release, the court shall, on the basis of available information, take into account such matters as:

(1) the nature and circumstances of the offense charged;

(2) the weight of the evidence against the defendant, except that the court may consider the admissibility of any evidence sought to be excluded;

(3) the history and characteristics of the defendant, including:

(A) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, history criminal history, and record concerning appearance at court proceedings.

(4) the nature and seriousness of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-5 (West 2024).

¶ 48    We have considered the conditions of pretrial release in section 110-10(b) in light of the factors listed in section 110-5 and find that no condition or combination of conditions can mitigate the threat to the safety of the community defendant poses. 725 ILCS 5/110-6.1(e) (West 2024). The evidence is clear and convincing that defendant, a convicted felon, was in actual or constructive possession of a firearm. See *People v. Wade*, 2025 IL App (1st) 231683, ¶ 25 (discussing constructive possession). The nature and circumstances of the offense are that

defendant armed himself and shot and killed an unarmed individual, possibly based on a perceived threat but where it has not been established that there was a threat or that any threat involved imminent death or great bodily harm to himself or another, or the commission of a forcible felony. Until defendant pleads and proves his affirmative defense, there is substantial evidence that defendant committed the charged offense in the form of video surveillance of the crime. The threat to the community by an individual who will arm himself with a firearm and disregard the law is substantial. Defendant's history and characteristics prove that defendant will not refrain from possessing a firearm or comply with the law. The threat defendant poses cannot be effectively mitigated by electronic monitoring, or any condition or combination of conditions of pretrial release.

¶ 49    We find that the State satisfied its "burden of proving by clear and convincing evidence: (1) the defendant committed an offense listed in the statute; (2) the defendant poses a real and present threat to the safety of any person, persons, or the community, based on the specific, articulable facts of the case; and (3) no condition or combination of conditions can mitigate that real and present threat." *Williams*, 2024 IL App (1st) 240341-U, ¶ 13.

¶ 50    Notice of Appeal was filed on September 10, 2025 with a disposition due date of December 4, 2025. The record was filed on October 10, 2025; Appellant's Memorandum was filed on October 20, 2025; and Appellee's Memorandum was filed on November 21, 2025. Pursuant to Rule 604(h), for good cause shown, the decision due date is extended to December 23, 2025.

¶ 51                              CONCLUSION

¶ 52    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 53    Affirmed.